IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTINA FILES
MAXWELL T. SANDFORD II
CHRISTINE A. TREML,

      Plaintiffs,

vs.                                                             Civ. No. 08-636 JCH/WDS

LOS ALAMOS NATIONAL SECURITY, LLC.
MICHAEL ANASTASIO
EVELYN MULLEN
HARALD DOGLIANI
KAREN BINTZ
DEAN RISINGER
      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' *Motion to Remand*, filed July 21, 2008 [Doc. 9]. The Court having carefully considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that Plaintiffs' motion for remand is well taken and is GRANTED.

## BACKGROUND

Plaintiffs' Complaint, initially filed in New Mexico's First Judicial District Court, sets forth state law claims for common-law retaliation, intentional infliction of emotional distress, breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract, constructive discharge, prima facie tort, and civil conspiracy. *See* Notice of Removal [Doc. 1], Ex. 1. In laying out its state claims, Plaintiffs' Complaint also references a federal statute, The National Security Act of 1954 ("the Act"), 50 U.S.C. § 401 *et. seq.*

Defendants timely filed a Notice of Removal on July 8, 2008 [Doc. 1].  The Notice of Removal asserts that this Court "has original jurisdiction founded on a contested and substantial issue of federal law, embedded in and clearly implicated on the face of the complaint, the resolution of which is necessary to grant the relief the Plaintiffs seek." *Id*. at 2.  Although Defendants' Notice does not identify the federal issues at stake or the state law claims to which they allegedly pertain, in their Memorandum in Opposition to Plaintiffs' Motion to Remand (hereinafter "Mem. Opp.") [Doc. 16], Defendants clarify their belief that Plaintiffs' claims necessarily involve both an interpretation of the Act and also "issues of national security."  Mem. Opp. [Doc. 16] at 2.

Plaintiffs' action is grounded on incidents allegedly occurring while employed by Los Alamos National Security, LLC ("LANS") in its International & Applied Technology ("IAT") Division.  The Complaint raises issues regarding alleged breach of security protocols reported to LANS management and Plaintiffs' attempt to resolve these issues with the project's external U.S. Government project sponsor ("Sponsor"), as well as disclosures made to the Sponsor concerning alleged improper charges billed by LANS for work not performed.

As relevant to the motion to remand, the Complaint alleges:

20. In the July 2007 security review, Defendant Mullen stated that the Sponsor-directed procedure used to control need-to-know access to the Project information was illegal and not enforceable, and further that it could be ignored.  The legality and enforceability of the information protection policy was verified in August by the Project Sponsor.  The Sponsor operational protocols in place were subject to the National Security Act of 1954.

....

22. From on or about July 17, 2007, onwards Files was instructed by IAT management and the Program Office not to talk to Project Sponsors except relating to technical details.  Despite ostensibly remaining as the Project Principal Investigator, Files was not allowed to inform the Sponsor that the Project had been shut down and that no work was being done on the Project despite billings and charges by Bintz, Program Office staff, Risinger, and possibly LANS security personnel continuing to be made against the Project funds for such purported work.  Files was thus also prohibited from informing the Sponsor that LANS had, over

> Plaintiffs' vigorous objection (and LANS management had been so informed by Plaintiffs) improperly "read in" persons not pre-approved by the Sponsor and had, in fact allowed persons physical access to the Project without appropriate need-to-know access clearance, in violation of the National Security Act of 1954. This violation ultimately was disclosed by Plaintiffs as required by the Act to LANS management and the Project Sponsor.
>
> ….
>
> **COUNT I.**
> **Retaliation**
>
> ….
>
> 38. In performing the actions as set out above, including but not limited to disclosing to LANS management security issues relating to the Project, in attempting to educate and require that LANS managers and IAT personnel abide by existing longstanding Project security protocols, and in disclosing to the Project Sponsor the apparent malfeasance and improper billing practices being employed by LANS *vis-à-vis* the Project, Plaintiffs made disclosures required by the National Security Act of 1954, and for the benefit of the general public, the public fisc, and national security, which disclosures are protected at common law, under various statutory laws and as a matter of public policy.
>
> 39. The aforesaid protected disclosures were contributing and motivating factors behind Defendants' joint and several decisions to take adverse and/or wrongful employment actions against Plaintiffs.

Complaint [Doc. 1, Ex. 1] at ¶ ¶ 20, 22, 38-39.

## **LEGAL STANDARD**

Federal courts maintain a presumption against accepting removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). This presumption stems from the "well-established" maxim that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [the federal courts'] constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005). The party attempting removal bears the burden of establishing that the requirements for federal jurisdiction have been met. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

Under 28 U.S.C. § 1441(b), federal district courts must have original jurisdiction over the

3

action sought to be removed for removal to be proper if there is not diversity of citizenship between the parties.[1]  Under 28 U.S.C. § 1331, a federal court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" (federal question jurisdiction).  Federal question jurisdiction exists only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  As "the master of the claim," a plaintiff may choose to pursue her case in state court rather than in federal court, thereby "avoid[ing] federal jurisdiction by exclusive reliance on state law."  *Id*.  Federal courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question, because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."  *Merrell Dow Pharm., Inc.* v. *Thompson*, 478 U.S. 804, 813 (1986).

In determining whether a case "arises under federal law," a court must examine whether a "'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).  Thus, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Merrell Dow*, 478 U.S. at 813.  Rather, "it is by now axiomatic that 'federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'"  *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (quoting *Grable & Sons Metal Prods.,*

---

[1] Because diversity of citizenship jurisdiction has not been pled and does not appear to pertain to this case, the Court focuses solely on whether it has federal question jurisdiction.

*Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)).  When examining whether a case turns on a question of federal law, a court "should focus on whether Congress evidenced an intent to provide a federal forum."  *Morris*, 39 F.3d at 1111 (reviewing Title VII and finding no suggestion that Congress intended to confer federal question jurisdiction over state contract claims arising out of private settlements of Title VII actions).

## DISCUSSION

In reviewing the Act, the Court can find no evidence that Congress intended to provide a federal forum for state causes of action only tangentially related to the Act.  Given the presumption against accepting removal jurisdiction and Defendants' failure to demonstrate that the resolution of Plaintiffs' claims necessarily requires resolution of a substantial question of federal law, the Court finds that removal of this case is not proper.  Although Defendants claim that each of Plaintiffs' state law claims are inextricably intertwined with issues of "national security," and that only federal courts are competent to address such issues, it is not at all clear that federal issues involving national security are necessary elements of Plaintiffs' state law claims.

One of Plaintiffs' claims concerns common-law retaliation.  Plaintiffs claim that Defendants retaliated against them because they disclosed security issues related to the Project to LANS management, because they attempted to require LANS managers and IAT personnel to abide by longstanding Project security protocols, and because they disclosed apparent malfeasance and improper billing practices to the Sponsor.  Plaintiffs assert that the disclosures they made were contributing and motivating factors behind Defendants' decisions to take adverse employment actions against Plaintiffs.  They assert that their disclosures were for the benefit of the general public, the public fisc, and national security, as well as being required under the Act.

5

Although Plaintiffs reference the Act in their complaint, they do not use it to create their cause of action, which is based on the alleged behavior of Defendants in response to activity that Plaintiffs claim is protected. Any alleged violation of the Act by Defendants, or claim by Plaintiffs that their disclosures were required by the Act is secondary, because the claim is based on Defendants' reaction to the disclosures, not whether the Act was violated. Although Plaintiffs may seek to use an alleged violation of the Act as evidence that Defendants had a motive for retaliation or cover-up, their right to relief does not depend on resolution of any question of federal law. Plaintiffs could prove retaliation under New Mexico law without demonstrating that Defendants violated the Act.

In order to prove retaliation under New Mexico common law in the context of this claim, Plaintiffs must demonstrate that they were subject to adverse actions "because they performed acts that public policy has authorized or would encourage." *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 714 (1996). Defendants argue that "it is only by looking to federal national security policy, embodied in the National Security Act or elsewhere, that a court will be able to resolve whether Plaintiffs' disclosures were protected by public policy such that any action by Defendants would be actionable as retaliation." Mem. Opp. [Doc. 16] at 7-8.

Defendants similarly claim that "[t]he federal question is not simply whether Defendants violated the [Act] by taking the alleged actions Plaintiffs assert are retaliatory" but also "whether Plaintiffs' conduct was protected by either the [Act] or federal national security policy so that an adverse action taken by Defendants in response would violate a clear mandate of public policy, thereby supporting a cause-of-action for retaliation." *Id*. at 6. This argument misconstrues both Plaintiffs' claim and New Mexico law. First, Plaintiffs claim does not rest on demonstrating that Defendants' alleged retaliatory actions violated the Act or any other federal law. If it did, that

would be a stronger argument for removal.  Instead, Plaintiffs' retaliation action rests on their claim that they were retaliated against for reporting possible security breaches, including breaches in violation of the Act, and also for reporting financial malfeasance, and that such retaliation against them was contrary to New Mexico public policy.  Second, Plaintiffs' need not necessarily demonstrate that their whistle-blowing actions were protected by the Act or national security policy to show that they were protected under New Mexico public policy.

In the realm of a retaliation claim, contrary to some other states, the "long established precedent in New Mexico...recognizes that the judiciary as well as the legislature is an appropriate source of public policy" and, thus, "statutes are not the sole source of public policy." *Gutierrez v. Sundancer Indian Jewelry*, 117 N.M. 41, 47 (Ct. App. 1993).  In finding that whistle-blowers who expose workplace conditions that violate public policy, regardless of the source of that policy, should be protected, the *Gutierrez* court approvingly quoted a decision from the Supreme Court of Arizona which stated: "We believe that whistleblowing activity which serves a public purpose should be protected.  So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged."  *Id*. at 48 (quoting *Wagner v. City of Globe*, 722 P.2d 250, 257 (Ariz. 1986)).  Thus, Plaintiff could demonstrate that its actions were protected under New Mexico public policy without resort to federal statute.

Nor do any of Plaintiffs' other state law claims depend on resolution of any federal question.  None of them requires the violation of a federal statute as an element of proof, but, instead, rely on specific actions alleged to have been taken by Defendants that violated an employment contract, inflicted emotional distress, interfered with an existing contract, or resulted in constructive discharge.

Plaintiffs also seek an award of attorney's fees and costs incurred as a result of fighting removal under 28 U.S.C. § 1447(c).  Despite finding for Plaintiff, the Court also finds that Defendant had "objectively reasonable grounds to believe the removal was legally proper." *Martin v. Franklin Capital Corp.*, 339 F.3d 1143, 1147 (10th Cir. 2004).  Thus, Plaintiffs' request for costs and fees in relation to this action is denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion for Motion to Remand* [Doc. 9] is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**